Stanley D. Saltzman, Esq. (SBN 90058)
Joel M. Gordon, Esq. (SBN 280721)
**MARLIN & SALTZMAN, LLP**
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Fax: (818) 991-8081
ssaltzman@marlinsaltzman.com
jgordon@marlinsaltzman.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIVE LEWIS, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>ALBERTSONS COMPANIES, INC.; and DOES 1 through 10 inclusive,<br><br>          Defendants. | **CASE NO. 2:22-cv-02453-ODW (RAOx)**<br><br>**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE RE: AMOUNT IN CONTROVERSY DATED APRIL 15, 2022**<br><br>**[Declaration of Joel M. Gordon filed concurrently]** |

page

Plaintiff Clive Lewis ("Plaintiff"), on behalf of himself and a similarly situated class of nationwide consumers, hereby submits his response to the Court's order to show cause ("OSC") regarding the amount in controversy:

## I.   INTRODUCTION

On April 1, 2022, Plaintiff filed a Class Action in this District against Defendant Albertsons Companies, Inc. for misleading buyers of its Signature Select club soda brand, which is advertised on its national website and sold throughout the country. *See* Complaint, Dkt. No. 1.  For a period of time prior to the fall of 2021, Defendant unlawfully advertised the brand of club soda as containing "0 mg" of sodium. Id., ¶ 2. Causes of action in the Complaint are alleged under California's Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), and Unfair Competition Law ("UCL"). Id., ¶ 8. While Plaintiff purchased the products in Los Angeles County, he alleges, on information and belief, that the falsely advertised product was sold throughout the country. Id., ¶ 20.

The Complaint was brought in this District pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), with allegations specifying an amount in controversy over $5 million, in addition to allegations of class size (more than 100 members) and minimal diversity between the parties (Plaintiff resides in California, defendant is headquartered in Idaho, the conduct alleged and a large portion of putative class are situated in numerous states other than California). Id., ¶¶ 9-12. On April 15, 2022, prior to Defendant joining the case, the Court issued the OSC with respect specifically to the amount in controversy requirement under the Class Action Fairness Act (CAFA). OSC, Dkt. No. 12.

## II.   Standard of Review

Congress intended CAFA jurisdiction to be "interpreted expansively." *De Vega v. Baxter Healthcare Corporation* 507 F.Supp.3d 1214, 1216 (N.D. Cal. 2019). The Ninth Circuit has found that "[i]n determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls." *Ibarra v.*

*Manheim Investments, Inc.* 775 F.3d 1193, 1197 (9th Cir. 2015). Ultimately, there need only be "**a plausible allegation** that the amount in controversy exceeds the jurisdictional threshold." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1195 (9th Cir. 2015) (emphasis added). The amount in controversy alleged "need not be supported by evidentiary submissions." *De Vega v. Baxter Healthcare Corporation*, 507 F.Supp.3d at 1216.

This case has proceeded through the statutorily required CLRA notice, mailed on August 7, 2021. Declaration of Joel M. Gordon ("Gordon Decl."), ¶ 2. An unsuccessful early mediation occurred on January 28, 2022. Id., ¶ 3. No other facts have been verified by Defendant, and, after the parties were unable to resolve the case early, Plaintiff filed the present Complaint on April 15, 2022. Id., ¶ 4.

### III.   Evidence Supports Amount In Controversy Allegation

#### a.   Restitution

Based on preliminary investigation, Plaintiff believes that the Signature Select Club Soda brand is available at most, if not all, of over 2,200 stores across 34 states and the District of Columbia.[1] Plaintiff believes that the false label claims were in stores outside of California, though he does not know exactly which of the 34 states. Defendant also operates a web site that advertised the Product, throughout the entire nation, with a screenshot that showed the false sodium content. Complaint, Dkt. No. 1, ¶ 7. Potentially every buyer of the product, which retails in California for $3.79 per unit, was deceived by the claim that Signature Select offered a completely sodium-free club soda.

In restitution alone, the amount in controversy would exceed $5 million if each of the 2,200 stores, on average, sold 600 units of club soda over the course of, say, nine months—in total, approximately 66 units per month, a conservative estimate for a grocery-store product. Based on what Plaintiff knows about the number of potential

---

[1] See corporate web site for information about the number of retail stores:
https://www.albertsonscompanies.com/about-aci/overview/default.aspx

PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

outlets, the price of the product, and period of time in which the false claims persisted, he can plausibly allege at least $5 million in available restitution.

### b. Attorneys' Fees

In addition to restitution, the Complaint specifies attorneys' fees under section 1781(e) of the CLRA, which can be included in the amount in controversy. *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018). Courts have also permitted to count toward the amount in controversy for purposes of jurisdictional analysis. A 25% of the common fund fee estimate has been considered fair by courts in this district for the purposes of an amount in controversy analysis. *Molnar v. 1-800-Flowers.com, Inc.*, No. CV08-0542CAS (JCX), 2009 WL 481618, at *5 (C.D. Cal. Feb. 23, 2009). Even if the restitution available were below $5 million, an additional 25% for attorneys' fees would extend the total over the CAFA threshold.

### c. Punitive Damages

The CLRA authorizes any consumer "who suffers any damage" because of an unlawful method, act or practice to bring an action for various forms of relief, including punitive damages. Civ. Code, § 1780, subd. (a)(4), which are available for consumers who suffer "as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770."

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp*., 261 F.3d 927, 945 (9th Cir. 2001). Punitive damages are available where a plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Civ. Code, § 3294, subd. (a). In the case of a corporate defendant, punitive damages may be awarded when "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice [was] on the part of an officer, director, or managing agent of the corporation." Civ. Code, § 3294, subd. (b). *See also State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419 ("We have instructed courts to determine the reprehensibility of a defendant by

- 4 -
PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a **reckless disregard of the health or safety of others**…") (emphasis added). Since this is a case involving a beverage advertised as having "0 mg sodium," consumers who relied on this claim in buying the product were likely watching their sodium intake, and thus false claims regarding sodium content demonstrate a reckless disregard for the health and safety of consumers.

It is probable, based on the allegations in the Complaint, that either knowledge of the false label or conscious disregard of its claims can be shown. A claim of "0 mg" of sodium for club soda is not only facially absurd (by definition club soda must have at least some sodium), but also in violation of the Food Drug and Cosmetics Act ("FDCA"), which states:

> A statement of the number of milligrams of sodium in a specified serving of food expressed as zero when the serving contains less than 5 milligrams of sodium, to the nearest 5-milligram increment when the serving contains 5 to 140 milligrams of sodium, and to the nearest 10-milligram increment when the serving contains greater than 140 milligrams.

21 C.F.R. 101.61. Plaintiff has alleged, and believes it is probable that he can demonstrate, that Defendant either proactively allowed or consciously disregarded advertising claims in violation of the FDA to persist for almost an entire year, and would have let those claims persist indefinitely if not for Plaintiff's CLRA notice in the summer of 2021. Letting such claims persist earned Defendant a significant advantage over competing club soda brands, none of which, by law, could claim "0 mg" of sodium. It is more likely than not that a large grocery-store chain, which employs numerous people to perform due diligence on products and advertising material, including conformity of those with FDA regulations, would let this error pass unnoticed for a lengthy period of time. Therefore, punitive damages are properly alleged and should count toward the amount in controversy.

- 5 -

PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

1    Since Defendant has not yet responded to the Complaint, and discovery has not

2  begun, Plaintiff can only estimate the amount of damages available under a punitive

3  damages analysis. However, with more than 2200 stores across the country, along with

4  a national web site that advertised the false claims for most of a year, the amount of

5  restitution, plus punitive damages, will likely exceed the $5 million threshold set by

6  CAFA.

7  **IV.**    <u>**CONCLUSION**</u>

8    For the foregoing reasons, Plaintiff requests that the Court retain jurisdiction

9  over the case.

10

11                                    Respectfully Submitted,

12  DATED:  April 29, 2022            **MARLIN & SALTZMAN, LLP**

13

14                                    By:  _s/ Joel M. Gordon_____
                                           Stanley D. Saltzman
15                                         Joel M. Gordon

16                                    Counsel for Plaintiff and the Putative Class

17

18

19

20

21

22

23

24

25

26

27

28