Stanley D. Saltzman, Esq. (SBN 90058)
Joel M. Gordon, Esq. (SBN 280721)
**MARLIN & SALTZMAN, LLP**
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Fax: (818) 991-8081
ssaltzman@marlinsaltzman.com
jgordon@marlinsaltzman.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIVE LEWIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTSONS COMPANIES, INC.; and DOES 1 through 10 inclusive,<br><br>Defendants. | **CASE NO. 2:22-cv-02453-ODW (RAOx)**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ALBERTSONS COMPANIES, INC.'S MOTION TO DISMISS**<br><br>Date:     September 19, 2022<br>Time:     1:30 p.m.<br>Ctrm:    5D, 5th Floor<br>Judge:   Hon. Otis D. Wright II<br><br>Action Filed: April 12, 2022 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................... 1

II.     FACTUAL BACKGROUND..................................................... 2

III.    LEGAL STANDARD ................................................................ 3

IV.     ARGUMENT ............................................................................. 4

        A.     Plaintiff Sufficiently Pleads Injunctive Relief ............... 4

        B.     Plaintiff Has Sufficiently Pled Equitable Relief Claims ............... 5

        C.     Plaintiff Has Standing to Challenge Representations on
               Web Site ......................................................................... 6

        D.     Plaintiff's Sufficiently Alleges Claim for Fraud and
               Deceit.............................................................................. 8

        E.     Plaintiff Sufficiently Pleads Punitive Damages Remedy............. 10

        F.     Leave to Amend ........................................................... 12

V.      CONCLUSION....................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Apple Inc.*,
   2020 WL 6710101 (N.D. Cal. 2020)....................................................................5, 8

*Astiana v. Dreyer's Grand Ice Cream*, Inc.,
   2012 WL 2990766 (N.D. Cal. 2012)............................................................................8

*Barker v. Riverside County Office of Educ.*,
   584 F.3d 821 (9th Cir. 2009).......................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .....................................................................................................3

*Brown v. Defender Sec. Co.*,
   2012 WL 5308964  (C.D. Cal. 2012)..........................................................................4

*Chacanaca v. Quaker Oats Co.*,
   752 F.Supp.2d 1111 (N.D. Cal. 2010) .......................................................................9

*Daniel v. Ford Motor Co.*,
   2013 WL 2474934, 2013 U.S. Dist. LEXIS 80638 (E.D.Cal. 2013).........................7

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017).....................................................................................6

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006).....................................................................................6

*Hall v. City of Santa Barbara*,
   833 F.2d 1270 (9th Cir. 1986).....................................................................................4

*Koehler v. Litehouse, Inc.*,
   2012 WL 6217635 (N.D. Cal. 2012)...........................................................................6

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001).......................................................................................4

*Lilly v. Jamba Juice Co.*,
   2015 WL 1248027 (N.D. Cal. 2015)...........................................................................6

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ..................................................................................12

*McDougal v. County of Imperial*,
   942 F.2d 668 (9th Cir. 1991).......................................................................................4

*McVicar v. Goodman Glob., Inc.*,
  1 F. Supp. 3d 1044 (C.D. Cal. 2014)............................................................7

*NL Industries, Inc. v. Kaplan*,
  792 F.2d 896 (9th Cir.1986)........................................................................4

*Reed v. NBTY, Inc.*,
  2014 WL 12284044 (C.D. Cal. 2014)..........................................................7

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012)................................................................6

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985)......................................................................8

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996)......................................................................4

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)......................................................................5

*Spann v. J.C. Penney Corp.*,
  2015 WL 1526559 (C.D. Cal. 2015)............................................................6

*Tyler v. Cisneros*,
  136 F.3d 603 (9th Cir. 1998)......................................................................8

*U.S. S.E.C. v. ICN Pharm., Inc.*,
  84 F. Supp. 2d 1097 (C.D. Cal. 2000).........................................................4

*United States v. City of Redwood City*,
  640 F.2d 963 (9th Cir. 1981)......................................................................4

*Walling v. Beverly Enters.*,
  476 F.2d 393 (9th Cir. 1973)......................................................................4

*Westlands Water Dist. v. Firebaugh Canal*,
  10 F.3d 667 (9th Cir.1993).........................................................................4

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ....................................................................10

**Statutes**

Civ. Code § 3294(b)...................................................................................11

Civil Code § 1780(a) .................................................................................11

Civil Code § 1782 .......................................................................................3

Civil Code § 1782(a) ................................................................. 3

Civil Code § 1782(d) ................................................................. 3

Civil Code § 3294(a) ............................................................... 11

**Rules**

Fed. R. Civ. P. 15 .............................................................. 4, 12

Fed. R. Civ. P. 15(a) ............................................................. 4

## I.     INTRODUCTION

This is a case involving blatant nationwide false advertising brought against one of the country's largest grocery chains due to its sale of "Signature Select" club soda boasting an impossible "0 mg" of sodium. On August 7, 2021, Plaintiff Clive Lewis ("Plaintiff") notified Defendant Albertsons Companies, Inc. ("Albertsons" or "Defendant") of the alleged violation. After waiting approximately two months to address the issue, the company eventually admitted that the packaging misrepresented the sodium content of the product, in violation of Food Drug and Cosmetics Act ("FDCA"), 21 C.F.R. 101.6, and claimed that the incorrect information was merely a "mistake" that would be corrected. Prior to notice from the Plaintiff, Albertsons had been selling the product for nearly a year, benefitting from the false representation and only admitting to the purported "mistake" under threat of a class action lawsuit.

Plaintiff, on behalf of himself and a similarly situated class of nationwide consumers, alleges in his Complaint that Defendant engaged in a practice, either intentionally or as the result of conscious disregard, to deceive consumers into buying "no sodium" club soda that actually contained sodium, in violation of the FDCA. In its motion to dismiss, Defendant admits to a "mistake" and asks the Court to dismiss any claims with regard to fraud or punitive damages. But this request is premature at this point in the litigation process. At the pleadings stage, Plaintiff adequately alleges fraud, putting the word "mistake" in quotes to reflect Defendant's explanation for the misconduct, not to plead that this deception was, in fact, a mistake. For nearly a year Defendant printed and distributed packaging in clear violation of the FDCA, putting at serious health risk the very consumers who would be likely to purchase a "no sodium" product, and did not recognize the mistake until the Plaintiff himself alerted the company to the fact in his CLRA notice letter. The allegations in the Complaint sufficiently describe this scheme to defraud, whether intentionally or through conscious disregard for the health and safety of Albertsons' consumers, along with punitive damages that would stem from the failure of any managing agent to recognize

and put a halt to this practice.

Aside from Defendant's claims stemming from this misreading of "mistake" in the Complaint, Defendant also incorrectly asks the Court to dismiss for lack of standing the claims based on representations on the company's web site despite the fact that Plaintiff relied on the same misrepresentations made there ("0mg Sodium" printed on the outer packaging") as were made in-store. Furthermore, the request for injunctive relief should remain because Plaintiff has received no confirmation that this practice has ended aside from an informal statement by Albertsons counsel. At the pleadings stage, prior to any verified discovery, Plaintiff cannot simply take Albertsons' word that they halted this deceptive practice.

Therefore, Plaintiff requests that the Court deny the motion to dismiss in its entirety.

## II.    FACTUAL BACKGROUND

On multiple occasions prior to June, 2021, Clive Lewis purchased a 12-pack of Defendant's Signature Select Soda at the Pavilions grocery store in West Hills, California. Complaint ¶ 18. Plaintiff purchased the Product because the box in which it was packaged, the only part of the packaging visible to the consumer, said that the product contained 0 mg of sodium. Id. Plaintiff carefully limits his intake of sodium, in general, and specifically purchased the Product instead of other brands of club soda because he believed that the Product contained no sodium. Id.

After purchasing the soda multiple times, Mr. Lewis only discovered the false claims after checking one of the individual cans (which are not visible through the packaging at the time of purchase.) Id. ¶ 19. According to the notation on the Product's can, found inside the Outer Packaging, the amount of sodium contained by the Product is 40 mg. Id. ¶ 5. In addition to selling incorrectly labeled packages throughout California and the rest of the United States, Albertsons included a photograph of the box on its national web site, listing "0 mg" of sodium under the photograph. Id. ¶ 7.

On August 7, 2021, Plaintiff mailed Defendant a notice of the deceptive acts and

practices underlying his CLRA claims, in accordance with Civil Code §§ 1782(a) and (d) to Albertsons' corporate offices in Fullerton, in compliance with Cal. Civ. Code § 1782. In the letter, Plaintiff outlined the violations discussed above and demanded the following remedy from Albertsons: (1) Identify or make a reasonable attempt to identify members of the Class; (2) Calculate the amounts owed to each member of the Class; (3) Notify each member of the Class of the amount(s) due, and refund in cash to each member of the Class the amount(s) due plus interest at the statutory rate of 10% per annum running from the date such amounts were paid; (4) Cease the false and deceptive advertising campaign for the Product; and (5) Pay all of the Plaintiff's legal fees and costs incurred to date. Id. ¶ 21.

Following two months of discussion, Albertsons' outside counsel informed Plaintiff's counsel that the incorrectly labeled box was no longer being shipped to stores and that the "mistake" had been corrected. Id. ¶ 22. Plaintiff received no other confirmation that the mistake had been corrected. Albertsons at no time offered any of the other remedies demanded in the notice letter. Id. ¶ 23. Sometime following the October 7 call, the false information was taken down from the nationwide Albertsons web site. However, no attempt was made to identify members of the class, to calculate the amounts owed to each member of the class, or to notify Class members of the amount due as a refund.

An early mediation session was held on January 28, 2022, but no resolution was achieved. Id. ¶ 22. Plaintiff filed his lawsuit in this Court on April 12, 2022, alleging violations of the CLRA (California Civil Code § 1750, et seq.), FAL (Cal. Bus. & Prof. Code § 17500, et seq.), and UCL (Cal. Bus. & Prof. Code § 17200 et seq.) for conduct in California and throughout the rest of the United States.

## III.   LEGAL STANDARD

To survive a motion to dismiss, a plaintiff need only allege facts that are enough to raise his or her right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether Plaintiff has stated

sufficient facts such that the claim is plausible, "[a]ll allegations of material facts are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the court must "draw inferences in the light most favorable to the plaintiff." *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); see also *U.S. S.E.C. v. ICN Pharm., Inc.*, 84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) ("The court must accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the Plaintiff.") (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973). A court will not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

In the Ninth Circuit, the Rule 12(b)(6) motion is viewed with disfavor and is rarely granted. *McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) (quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)). "For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6)." *Brown v. Defender Sec. Co.*, 2012 WL 5308964 *2 (C.D. Cal. Oct. 22, 2012) (citing *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). As a general rule, leave to amend a complaint should be freely granted. Fed. R. Civ. P. 15(a).

## IV.   ARGUMENT

### A. Plaintiff Sufficiently Pleads Injunctive Relief

Each of the allegations of "mistake" and corrective action cited by Defendant in its Motion are based on representations made informally, prior to filing the Complaint, by Defendant to Plaintiff. *See* Complaint ¶ 23. There has never been any confirmation that the mislabeled product was completely discontinued, or that it is not currently

being sold. In fact, Plaintiff only knows the identity of one state (California) where the mislabeled product was sold, even though Defendant has represented that the mislabeling occurred throughout the nation. Id. ¶ 20. Plaintiff is not prepared to take Defendant at its word that the conduct ceased completely in September 2021 and is no longer ongoing. While proof that Defendant has ceased its misconduct might be available through discovery, it is premature at the pleadings stage to dismiss a claim for injunctive relief. Therefore, Plaintiff still demands appropriate injunctive relief, including the correction of an erroneous impression consumers may have gotten about the Product's sodium content, such as the placement of corrective advertising and written notice to the public. Id. ¶ 33.

**B. Plaintiff Has Sufficiently Pled Equitable Relief Claims**

Relying on the Ninth Circuit's recent decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), Defendant argues there is no basis for equitable relief under the CLRA, FAL, and UCL because Plaintiffs have not alleged a lack of adequate remedy at law. Motion, p. 8. In *Sonner*, where plaintiff dismissed her legal damages to assert restitution in the exact same amount in order to secure a bench trial, the facts are easily distinguishable from Plaintiff's allegations here that he can only be made whole by both legal and equitable remedies. *Sonner*, 971 F.3d at 844. Moreover, the basis for Defendant's claim is simply that the Complaint seeks to certify a class asking for monetary damages. *See* Motion, p. 8. This is not sufficient, even under *Sonner*. In a case that followed *Sonner*, a Northern District court pointed out, "The mere fact that the [Complaint] requests damages is not sufficient to show that restitution is foreclosed. Instead, the plaintiffs must adequately allege that, under usual principles of equity, their remedies at law would be inadequate to what restitution could provide." *Anderson v. Apple Inc.*, No. 3:20-CV-02328-WHO, 2020 WL 6710101, at *8 (N.D. Cal. Nov. 16, 2020).

Here, Plaintiff makes the necessary allegations that only equitable remedies could cure some of the harm committed by Defendant, which it has never confirmed

stopping, either in stores or on their website. Complaint ¶ 33. If the mislabeling has continued, the requested injunctive relief here would cure future harm in a way that would be impossible to achieve with the legal remedies requested for past harm. Likewise, the Complaint alleges the chance of future harm if the misconduct is ongoing. Id. ¶ 19. Plaintiff, even after becoming aware of Defendant's false advertising, can still have standing to seek injunctive relief to enable the Court to enjoin Defendant's false advertising under California's consumer protection laws. *See Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *12 (C.D. Cal. Mar. 23, 2015); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635 (N.D. Cal. 2012) ("[t]o do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief.").

In *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017), the court stated that "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* (citing i.e., *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 527 (N.D. Cal. 2012)); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015). Here, Plaintiff sufficiently demonstrates that he is "realistically threatened by a repetition of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). As with the plaintiff in *Davidson*, Plaintiff continues to shop at the stores where he purchased the Product and would still purchase the Product if he was able to determine that the representations made by the packaging were an accurate reflection of the product inside. Complaint ¶ 19.

## C. Plaintiff Has Standing to Challenge Representations on Web Site

Although Plaintiff alleges that he relied on misrepresentation made in the outer packaging viewed in-store, he still has standing to bring this case on behalf of a purported class that includes consumers who relied on the same representations made

on the company's web site. Complaint ¶ 7. The misrepresentation at issue is the "0 mg sodium" claim on the outer packaging of the product. Id. ¶¶ 2, 7. Whether a consumer saw the packaging in-store or a picture of that packaging on the web site, the misrepresentation is the same. Furthermore, Alberstons does not sell the product directly through the web site. Sales made through the website go through individual stores, so the misrepresentations made there induce consumers to buy the product in-store, the same as Mr. Lewis did. All purchases result in in-store sales, and all purchases rely on the same outer-packaging misrepresentation.

Defendant cites case law in which plaintiffs alleged reliance on misrepresentations made on a website that were not viewed by plaintiffs before making a purchase. For example, in *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1052 (C.D. Cal. 2014), the plaintiff did not view the advertisement alleged to be fraudulent. (citing also *Daniel v. Ford Motor Co.*, No. CIV 11–02890, 2013 WL 2474934, at *4–5, 2013 U.S. Dist. LEXIS 80638, *12–13 (E.D.Cal. June 7, 2013), in which "[A] plaintiff's claim must fail when he never viewed a website, advertisement, or other material that could plausibly contain the allegedly omitted fact.") Defendant also cites *Reed v. NBTY, Inc.*, No. EDCV 13-0142 JGB (OPx), 2014 WL 12284044, at *7 (C.D. Cal. Nov. 18, 2014), in which the court held, "It is undisputed that neither [plaintiff] viewed the labels of [the Products] or visited Defendants' websites prior to purchasing the Products. Accordingly, the named plaintiffs do not have standing to pursue claims on the basis of representations made on the labels or on Defendants' websites."

Here, Plaintiff not only viewed the advertising material that misrepresented sodium content; the entire purported class, including those who first saw a picture of the outer packaging on the national website, relied on the exact same misrepresentation made and went ahead to purchase the product through the stores, whether in-person or via pick-up or delivery. Complaint ¶¶ 2,7. The cases cited by Defendant have no relevance on the situation alleged in the Complaint. Whether in-store or on the website, the misrepresentation is exactly the same ("0 mg") and made in exactly the same

fashion (labeling on the outer packaging of a 12-pack). This is analogous to cases in which a plaintiff alleges causes of action on behalf of a class that relies on the same advertising material over a variety of products. See *Anderson v. Jamba Juice Co*., 888 F.Supp.2d 1000, 1001 (N.D. Cal. 2012) (finding that although the plaintiff purchased only two of the many flavors of smoothie kits, the plaintiff had standing to bring claims on behalf of purchasers of the other flavors because "the same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor; all smoothie kits [were] labeled 'All Natural,' and all smoothie kits contain[ed] allegedly non-natural ingredients."); *Astiana v. Dreyer's Grand Ice Cream*, Inc., 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (concluding that the plaintiffs had standing to sue based on flavors of ice cream they did not purchase because many of the contested ingredients were the same across all of the ice creams at issue and their labels were nearly identical). As with those cases, the issue here is whether the entire class relied on the same misrepresentation.

Thus, Plaintiff has standing to bring this case on behalf of all consumers who relied on the misrepresentation on the product's outer packaging, whether the consumers saw the packaging on the store shelves or saw a picture of it on the website. In both cases, the misrepresentation itself and the reliance on said misrepresentation are identical.

**D. Plaintiff's Sufficiently Alleges Claim for Fraud and Deceit**

The Ninth Circuit has interpreted Rule 9(b) to require that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). In evaluating the allegations, the Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).

Defendant insists that Plaintiff cannot allege fraud because he instead already

alleged a "mistake." Once again, there was no such allegation in the Complaint. The word "mistake" was put in quotes for a reason: because this was the unconfirmed explanation given by Defendant, not because Plaintiff accepts this explanation as true. Instead, the Complaint alleges that the misrepresentation, which led to the false display of sodium content, enticing purchases by consumers who would potentially be at risk for high blood pressure and other conditions caused by excessive sodium intake, must have been the result of either intentional conduct or conscious disregard. Complaint, ¶ 3. One of the country's largest grocery chain likely has multiple checkpoints along their supply chain, from designing marketing material to packaging products to shipping nationwide to stocking in their thousands of retail outlets, not to mention the web designers, management, and legal staff who must view images of the packaging before they reach consumers. An error made in violation of the FDCA and continuing without notice for nearly a year, until a consumer mails a CLRA letter on behalf of himself and other consumers, is not likely to be the result of a mere mistake.

On their face, these allegations are sufficient to give Defendants ample notice of the particular circumstances of Plaintiffs' claims against them, and therefore satisfy Rule 9(b)'s burden. *See Chacanaca v. Quaker Oats Co*., 752 F.Supp.2d 1111, 1126 (N.D. Cal. 2010) ("[P]laintiffs have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear . . . , and the relevant time period in which the statements were used. As such, they have satisfied the requisite who, what, when, where, and how of the misconduct charged"). Nevertheless, Defendants ask the Court to impose a more demanding standard than the law allows.  The Court should reject that invitation and deny the Motion.

The reason that Plaintiff puts "mistake" in quotes is because he does not believe this was a simple mistake, and the allegations made in the Complaint reflect this contention. Defendant notes that the impossibility of "club soda" having no sodium somehow puts the burden on the consumer to possess this specialized knowledge. The average reasonable consumer does not know the etymology of the word "soda" or that

the product necessarily contains sodium. The average reasonable consumer only knows what is represented on the packaging and can weigh a claim of "0 mg sodium" against claims made by competing club soda products. Instead, it is the job of Albertsons, one of the country's largest grocery chains, to know that it cannot claim club soda contains "0 mg sodium." An allegation of fraud is plausible in the case of a large grocery chain, which presumably employs in-house counsel and a variety of managers ratifying packaging design and the introduction of products into the stream of commerce. The fact that *not a single Albertsons employee* pointed out this flagrantly deceptive and false claim at any point, relying instead on the notice of a single consumer nearly a year after the practice began, is far more implausible then the company knowing about or consciously disregarding evidence of this practice.

Furthermore, the fact that the fine print on the can itself, which cannot be viewed without purchasing the product first and opening the mislabeled outer packaging, says "40 mg" of sodium and lists sodium citrate in its ingredients, does not mean a reasonable consumer would not have relied on the outer packaging. See *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.")

Much of Defendant's argument that the fraud claim should be dismissed stems from this claim that Plaintiff has alleged a "mistake." Clearly, the Complaint's use of the word mistake was in quotes, reflecting Albertsons excuse, not the allegations that Plaintiff have actually put into the Complaint.

### E. Plaintiff Sufficiently Pleads Punitive Damages Remedy

Plaintiff has alleged facts establishing entitlement to punitive damages throughout the Complaint. Defendant insists that there was no intent to deceive, but that has no bearing on the sufficiency of the pleadings, which adequately allege conduct that was fraudulent rather than the result of a simple "misprinting." Plaintiff

has alleged that Defendant knew or should have known about the error at some point prior to the initial printing, or even at the very least during the year in which the error continued to appear on packaging labels.

The CLRA authorizes any consumer "who suffers any damage" because of a unlawful method, act or practice to bring an action for various forms of relief, including (1) actual damages, (2) an order enjoining the methods, acts, or practices, (3) restitution of property, (4) punitive damages, and (5) any other relief the court deems proper. Civ. Code, § 1780, subd. (a). Punitive damages are available where a plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Civ. Code, § 3294, subd. (a). In the case of a corporate defendant, punitive damages may be awarded when "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice [was] on the part of an officer, director, or managing agent of the corporation." Civ. Code, § 3294, subd. (b).

At this stage in the litigation, Plaintiff does not know the identity of officers, directors, or managing agents who would be in the position to approve labeling that goes into the stream of commerce. However, the Complaint plausibly alleges that individuals from the company played a role in, at best, consciously disregarding this error for nearly a year. A purported "mistake," left uncorrected, despite the fact that the mistake should have been known to any number of officers, directors, or managing agents at any point from design of the label to filling the packaging at the distribution plants to putting out for sale in the actual grocery stores. This "mistake" led to the false display of sodium content, enticing purchases by consumers who would potentially be at risk for high blood pressure and other conditions caused by excessive sodium intake. In this best-case scenario for Albertsons, the company has already admitted to a "mistake" that rises to the level of "conscious disregard" for the health and safety of its customers, a clear violation of the FDCA allowed to continue until a consumer, the Plaintiff himself, purportedly put a stop to it after a year. The Complaint alleges this

factual basis for seeking punitive damages, even if at this early stage in the litigation the identity of the individuals involved in this process are not known.

### F.  Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15...[is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

## V.   CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety. To the extent that the Court finds that any of Plaintiffs' allegations are defective, Plaintiffs respectfully request leave to amend under Fed. R. Civ. P. 15.

Respectfully Submitted,

DATED:  July 14, 2022                   **MARLIN & SALTZMAN, LLP**

By:  s/ Joel M. Gordon
Stanley D. Saltzman
Joel M. Gordon

Counsel for Plaintiff and the Putative Class

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS