O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| CLIVE LEWIS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTONS COMPANIES, INC.,<br><br>Defendant. | Case № 2:22-cv-02453-ODW (RAOx)<br><br>**ORDER DISMISSING ACTION *SUA SPONTE* FOR LACK OF SUBJECT MATTER JURISDICTION (CAFA AMOUNT IN CONTROVERSY)** |

## I.  INTRODUCTION

Plaintiff Clive Lewis filed this putative class action against Defendant Albertsons Companies, Inc., alleging that Albertsons understated the sodium content in its Signature Select brand of club soda (the "Product").  (Compl. ¶ 1, ECF No. 1.)  On April 15, 2022, the Court announced a facial and factual inquiry into subject matter jurisdiction and ordered Lewis to show cause why the case should not be dismissed for lack of subject matter jurisdiction.  (Order to Show Cause ("OSC"), ECF No. 12.)  The Court directed Lewis to submit evidence demonstrating that the amount in controversy in this case exceeds $5 million as is required for jurisdiction under the Class Action Fairness Act ("CAFA").  (*Id.*)  The Court received and reviewed Lewis's Response to the OSC.  (Pl.'s Resp. ("Response"), ECF No. 13.)  For

the reasons that follow, the Court finds that Lewis fails to demonstrate that the amount in controversy exceeds $5 million and accordingly **DISMISSES** the case.

## II.   BACKGROUND

Lewis alleges that Albertsons's twelve-pack of the Product has fraudulent and misleading outer packaging because the packaging states that the Product has 0 mg of sodium while the individual cans state the Product contains 40 mg of sodium per can. (Compl. ¶¶ 1, 2.)  Lewis asserts Albertsons is misleading consumers because they cannot see the true sodium content until after they purchase the Product and remove the outer packaging.  (*Id.* ¶ 2.)  Accordingly, Lewis contends, the misleading packaging induced consumers to purchase the Product over competitor products because they "believed they were getting a product without sodium, which millions of American consumers, either on the advice of their physicians or otherwise, need to limit or omit from their diet." (*Id.* ¶ 3.)  Lewis alleges that the Product was sold with this misleading packaging "[d]uring most of 2021" until it was discontinued in September 2021.  (*Id.* ¶¶ 3, 7.)

Lewis asserts five counts against Albertsons, under California law: (1) violation of the Consumer Legal Remedies Act; (2) violation of state false advertising law ("FAL"); (3) violation of state unfair competition law ("UCL"); (4) negligent misrepresentation; and (5) fraud and deceit. (*See generally Id.*)  Lewis seeks relief on behalf of himself and a nationwide class.

## III.   LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress, U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it, *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  CAFA vests original jurisdiction in district courts to hear civil actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in

which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020).

A complaint filed in federal court must contain only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). But when a party contests, or the court questions, another party's allegations concerning the amount in controversy, the party claiming jurisdiction submit proof and the court decides whether it has proven the amount in controversy is met by a preponderance of the evidence. *Id.* at 88–89. These procedures apply to the amount in controversy requirement in CAFA cases to the same extent they apply to ordinary diversity cases.[1] *Ibarra v. Manheim Invs.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

## IV. DISCUSSION

This jurisdictional inquiry is about whether the amount in controversy exceeds $5,000,000, as required by CAFA. 28 U.S.C. § 1332(d)(2)(A). The amount in controversy is simply "the amount at stake in the underlying litigation." *Jauregui*, 2022 WL 804148, at *4 (quoting *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)). It "does not mean likely or probable liability; rather, it refers to possible liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (noting that the amount in controversy is "an estimate of the amount that will be put at issue in the course of the litigation" (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008))).

---

[1] However, the presumption against jurisdiction that attaches in cases removed on diversity does not apply in CAFA cases. *Jauregui v. Roadrunner Transp. Servs., Inc.*, --- F.4th ---, 2022 WL 804148, at *3 (9th Cir. Mar. 17, 2022). Instead, "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed . . . ." *Id.* (quoting *Dart Cherokee*, 574 U.S. at 89).

Here, Lewis fails to make a sufficient factual showing of the amount in controversy. Lewis incorrectly bases his estimated damages on the total purchase price of the Product rather than the fraction of the purchase price that consumers overpaid when buying soda that contained 40 mg of sodium rather than 0 mg of sodium. Moreover, Lewis's conclusory reference to attorneys' fees and punitive damages is vague and unsubstantiated and wholly fails to fill the gap between the actual damages Lewis does place in controversy, on the one hand, and the requisite $5 million amount in controversy, on the other.

In his Response to the Court's OSC, Lewis asserts that the amount in controversy is met in restitution alone. (Response 3–4.) Without any substantiation whatsoever, Lewis contends that the Product "retails in California for $3.79 per unit," and therefore, "the amount in controversy would exceed $5 million if each of the 2,200 stores, on average, sold 600 units of club soda over the course of, say, nine months." (*Id.* at 3.) When multiplying this amount of units sold by the number of stores and by the price per unit, Lewis's total amount in controversy is $5,002,800.

Even if Lewis did provide support for the aforementioned values and the Court accepts them as true, Lewis's calculations are problematic in two principal ways. First, Lewis cites to the purchase price of the Product in *California* but relies on purchases made in thirty-five different states. (*See id.* ("Plaintiff believes that the Signature Select Club Soda brand is available at most, if not all, of over 2,200 stores across 34 states and the District of Columbia.").) The Product's purchase price was likely lower in at least some of the thirty-four states outside of California. This observation is material given that Lewis's calculated restitution damages exceed $5 million by only a very small amount. For example, if the true average purchase price of a twelve-pack of the Product is just 2.7%, or ten cents less than the price of the product in California, then the amount in controversy does not, in fact, exceed $5 million. This circumstance is highly likely given the high cost of living in California. And this is the less egregious of the two errors.

Second, the Product's entire purchase price is an inaccurate measure of the restitution that would be owed to the consumers because consumers would not be entitled to the entire purchase price. Rather, they would be entitled only to the fraction of the purchase price proportional to the reduction in the value of the Product resulting from it containing 40 mg of sodium instead of 0 mg. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) (noting, in the context of an FAL or UCL action, that "[t]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution.") Thus, unless Lewis can allege and demonstrate that the Product with 40 mg of sodium has no value whatsoever—which he does not and likely cannot—Lewis cannot rely on the full purchase price for his restitution calculations. Thus, in order to estimate the total restitution, the Court must calculate the amount by which the value of the Product is reduced from having a higher sodium content than advertised. Lewis does not make any allegations in his Complaint, or provide any information in his Response, that would allow the Court to make such a calculation.

Nonetheless, even if the Court assumes that the 40 mg of sodium in each unit of the Product diminished its value by half, the restitution per unit would still only be $1.90. This value yields $2,376,000 in total restitution, less than half of the requisite $5 million. Because the Product purchase price will likely be lower in states outside of California *and* the restitution will only be the amount in value consumers lost by purchasing soda with higher sodium content, based on the current allegations and information, the Court estimates that the total restitution will likely be much lower than even the $2,376,000 estimate.

Still, Lewis contends he can demonstrate this case passes the $5 million threshold if the Court considers the 25% of the compensatory damages that Lewis contends would be awarded in attorneys' fees. (Response 4 (citing *Molnar v. 1-800-Flowers.com, Inc.*, No. CV08-0542CAS (JCX), 2009 WL 481618, at *5 (C.D. Cal.

Feb. 23, 2009).) Even if the Court applies this 25% in attorneys' fees to the generous estimate of $2,376,000, the amount in controversy is still only $2,970,000.

Finally, Lewis argues that the Court will likely award punitive damages, which can be considered in this amount in controversy analysis. However, Lewis fails to provide any estimate of the amount of punitive damages or analogize to similar cases where courts awarded punitive damages. Based on the foregoing analysis, for CAFA jurisdiction to exist, the punitive damages would need to amount to almost the same as the presumed actual damages. Yet, Lewis has not submitted any evidence, or even asserted a plausible allegation, suggesting Albertsons had the type of willfulness or other wrongful intent typically required to impose such a draconian remedy. And, as mentioned, Lewis does not even provide analogous cases. Accordingly, Lewis has not met his burden of establishing this Court's subject matter jurisdiction under CAFA.

Finally, in Lewis's Response, he asserts that, "Since Defendant has not yet responded to the Complaint, and discovery has not begun, Plaintiff can only estimate the amount of damages available under a punitive damages analysis." (Resp. 6.) However, Lewis does not request jurisdictional discovery or any opportunity to substantiate his speculative damages request. Thus, Lewis essentially admits that his contention that the amount in controversy exceeds $5 million is based on idle speculation, not on evidence or a concrete plan to marshal evidence. The Court must therefore dismiss the case for lack of CAFA jurisdiction.[2]

## V. CONCLUSION

For these reasons, the Court finds that Lewis fails in his burden to demonstrate that the amount in controversy exceeds $5 million. Thus, the Court lacks subject matter jurisdiction under CAFA and **DISMISSES** this action without prejudice.

---

[2] The Court notes that dismissing this case does not appear to result in Lewis's loss of any substantive rights, and does not appear to prevent him from bringing the action back before federal court if discovery in a state action ultimately reveals a substantial basis for CAFA jurisdiction.

The Court **VACATES** all dates and deadlines in this matter and **DENIES** as **MOOT** the pending Motion to Dismiss, (ECF No. 18). The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

August 9, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**